IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TAMMY J. ADAMS, | : | Case No. 1:05-CV-339 |
| | : | |
| Plaintiff | : | District Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER GRANTING |
| | : | DEFENDANT'S MOTION FOR |
| AMPLE INDUSTRIES, INC., | : | SUMMARY JUDGMENT |
| | : | |
| Defendant. | : | |
| | : | |

This matter is before the Court on Defendant Ample Industries, Inc.'s Motion for Summary Judgment. (Doc. 18.) On May 18, 2005, Plaintiff Tammy J. Adams filed a complaint against Defendant, her former employer, asserting claims for sexual harassment and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. Defendant contends that there are no material facts in dispute and that it is entitled to summary judgment on Plaintiff's claims. For the reasons that follow, the Court **GRANTS** Defendant's Motion for Summary Judgment.

I.  BACKGROUND

Defendant Ample Industries, Inc. ("Ample") employed Plaintiff from September 2001 to November 2004 at its Franklin, Ohio manufacturing facility. During the first two years of her employment, Plaintiff worked the night shift, but in September 2003, she switched to the day shift. According to Plaintiff, it was around that time that she began experiencing problems with another Ample employee, Maurice Becker, who subjected to sexual harassment in the form of

1

"unwelcome, inappropriate, and offensive sexual remarks."[1] (Doc. 1 at ¶ 8.) Plaintiff also witnessed Becker behave similarly toward other female employees.

As to the inappropriate comments, Plaintiff specifically recalled one occasion during which Becker stated, "I'm going to take you to the baptismal pool and show you a good time." (Adams Dep. 21.) Plaintiff believed this comment to include sexual innuendo and alleges that Becker knew that she was religious and that this comment would bother her. On a separate occasion, Adams was talking with a coworker in the company's lunchroom about a party that another coworker was throwing. Adams stated that she was not going to go to the party and Becker, who had apparently been listening to the conversation said that Adams "wasn't going because [she] thought [her] pussy was made out of gold." (Adams Dep. 61.)

Becker's comments escalated to inappropriate and offensive physical contact in July 2004. For example, Adams claims Becker touched or grabbed her butt, poked her with tools, and pulled at her pants. On one occasion when Plaintiff was at a machine assembling boxes, Becker grabbed her butt while he was walking by. Plaintiff pushed Becker and told him to stop, but he just laughed and walked away. The next day, while Adams was standing at another machine, Becker approached her from the front and tried to stick a pipe or a tool between her legs. Adams pushed the object away and Becker commented, "you watch everything that I do." (Adams Dep. 47.)

Shortly thereafter, Adams and another employee, Theresa Carmody, complained to their supervisor, Deanna Freeze, about Becker's behavior.[2] On July 21, 2004, Freeze notified Human

---

[1] Becker was not Adam's supervisor at any time during her employment with Ample.

[2] Plaintiff first made an oral complaint to Freeze sometime in mid-July 2004, and then submitted a written complaint on August 1, 2004.

Resources Director Jim Cracraft of the complaints. Defendant Ample has in place a sexual harassment policy to deal with incidents such as occurred in this case. The policy, which is included in Ample's "Safety Manual & Company Policies," provides that:

> It is the policy of Ample Industries, Inc. to provide a work environment free from sexual harassment. It is the company policy that no employee should have to work in an environment that he or she finds offensive. . .. All employees will be expected to comply with this policy and take appropriate measures to ensure that such conduct does not occur. Appropriate disciplinary action will be taken against any employee who violates this policy. Based on the seriousness of the offense, disciplinary action may include verbal or written reprimand, suspension, or termination.

(Cracraft Aff. Ex. 1 at 41-42.) The policy also sets forth the following complaint procedure:

> 1. Any employee who believes he or she has been the subject of sexual harassment should report the alleged act to their Supervisor; Department Manager; Human Resource Director; Plant Manager; or General Manager.
> 2. If a complaint involves a Manager or Supervisor, the complaint shall be filed directly with the Human Resource Director; Plant Manager; or General Manager.
> 3. The Company will make every effort to handle complaints in a timely and confidential manner. The purpose of this provision is to protect the confidentiality of the employee who files a complaint, to encourage the reporting of any incidents of sexual harassment, and to protect the reputation of any employee wrongfully charged with sexual harassment.
> 4. Investigation of a complaint will normally include conferring with the parties involved and any named or apparent witnesses. Employees shall be guaranteed an impartial and fair investigation. All employees shall be protected from coercion, intimidation, retaliation, interference or discrimination for filing a complaint or assisting in an investigation.
> 5. If the investigation reveals that the complaint is valid, prompt attention and disciplinary action designed to stop the harassment immediately and to prevent its recurrence will be taken.

(Id. at 43.)

Pursuant to this policy, Cracraft met with Becker on July 21, 2004 to discuss the accusations with him. In response to the accusations, Becker stated only that he "didn't remember saying anything" or "acting that way." (Cracraft Aff. Ex. 5-10.) Nonetheless,

Cracraft "explained that his comments and conduct were totally unacceptable and that any further similar sexually related comments or conduct on his part would be grounds for punitive action up to, and including, termination of his employment." (Id.) Cracraft also launched an investigation into Becker's behavior.

During the investigation, more employees came forward with complaints against Becker. For example, a third employee, Tammy Allen, reported that on the evening of July 27, 2004, Becker came into work smelling of alcohol. He approached Allen and asked her if she needed any tools. When Allen told him no, Becker "grabbed himself and said that he had the only fucking tool [she] needed." (Cracraft Aff. Ex. 5-3.) Becker left after making that comment, but then returned some time later and put his hand down the back of Allen's pants. In addition to this incident, another employee, Jennifer Stamper came forward about an earlier problem she had with Becker that she had not reported at the time.

Based on the additional complaints, Cracraft determined a suspension was warranted. As a result, on July 28, 2004, Ample suspended Becker for five days without pay while the company completed its investigation. At the close of the five-day suspension, Ample imposed an indefinite suspension and informed Becker that he could return to work only after he sought counseling and obtained the opinion of the counselor that he would be able to refrain from further inappropriate behavior.[3] During his absence from work, Becker sought counseling, and on August 19, 2004, Ample decided to allow Becker to return to work on a conditional basis.

---

[3] Though the company claims in its Motion for Summary Judgment that it terminated Becker, it is unclear whether Becker was ever officially terminated or whether his suspension without pay was continued. Cracraft characterized the absence as an undefined suspension during his deposition: "I simply was in communication and made it clear that the suspension continued undefined . . ." (Cracraft Dep. 30.) Regardless, the parties do not dispute that Becker was absent from work with out pay for approximately three weeks.

Before returning to work, Becker had to sign an agreement indicating that he would continue the recommended counseling and stating that he understood his return to be dependent on a zero tolerance for any further incidents of sexual harassment.  The agreement further stated that "[a]ny violations of the conditions described in this section will be cause for immediate termination of [Becker's] employment with Ample Industries."  (Cracraft Aff. Ex. 8.)  Subsequent to signing this agreement, Becker completed counseling and received a letter from a professional counselor indicating that Becker had assumed responsibility for his actions, understood that his actions were inappropriate, and did not foresee any future problems.

Shortly after Becker's return, by letter dated September 4, 2004, Ample advised Adams that it had investigated the complaints against Becker and had taken action to resolve the complaints.  The letter stated in relevant part:

> We are providing you this letter to give you follow-up information relative to your complaint of sexual harassment by Maurice Becker.
>
> As you know, we did a thorough investigation of your complaint.  Sufficient evidence was collected in our investigation to determine that a course of action was indicated as necessary to correct/resolve the conduct of sexual harassment that you reported.
>
> While we, management, are not at liberty to discuss the details of our actions(s) relative to this matter, we do want to communicate to you that, in fact, actions have and continue to be taken to directly address this issue.
>
> Ample Industries written policy strictly prohibits any type of sexual harassment. We assure you that you will be provided a workplace free of sexual harassment conduct.
>
> The management of Ample Industries will continue to take such actions as are necessary to assure our policies, including our strict sexual harassment policy, are consistently enforced to provide all employees a safe work environment.

(Doc. 1 Ex. A.) Plaintiff acknowledges receiving this letter, but argues that the letter was not an adequate assurance that Becker would cease behaving in a sexually harassing manner. Furthermore, Plaintiff felt that Ample was protecting Becker rather than her because the company would not disclose the precise nature of the disciplinary actions it took against Becker.

Indeed, Plaintiff claims that Becker continued to harass her after he returned to work. Specifically, Plaintiff claims that Becker continued to make her feel "uncomfortable" by laughing, smiling, and "making gestures." (Adams Dep. 93.) Though she failed to report these incidents to anyone at Ample, Adams contends that the continued contacts with Becker made her feel nervous and sick, prevented her from doing her job as she wanted to, and caused her to hate going to work. Claiming constructive discharge, Plaintiff argues that these conditions eventually prompted her to resign. To the contrary, Defendant argues that Plaintiff reported no incident of continued harassment after her July 2004 complaint. Moreover, Defendant argues that Plaintiff resigned because, while she was on leave of absence for foot surgery, she obtained another position with better benefits, higher pay, and better hours.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. Matsushita

Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986).  The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  The nonmoving party "must set forth specific facts showing there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Liberty Lobby, 477 U.S. at 249.  A genuine issue for trial exists when the evidence is not "so one-sided that one party must prevail as a matter of law."  Id. at 252.

**III.    ANALYSIS**

Adams asserts that Ample violated Title VII by maintaining a work environment that was hostile to her because of her sex.  Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . .."  42 U.S.C. § 2000e-2(a)(1).  In Meritor Savings Bank v. Vinson, 477 U.S. 57, 66 (1986), the Supreme Court held that a plaintiff may establish a violation of Title VII by proving that discrimination based on sex created a hostile or abusive work environment.  The statute grants employees "the right to work in an environment free from discriminatory intimidation, ridicule, and insult."  Id. at 65.

In order to prevail on her hostile work environment claim, Adams must show that (1) she is a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) the harassment created a hostile work environment; and (5) Ample knew or should have known about the alleged harassment and failed to implement prompt and appropriate corrective action. See Williams v. Gen. Motors Corp., 187 F.3d 553, 560-61 (6th Cir. 1999); Fleenor v. Hewitt Soap Co., 81 F.3d 48, 50 (6th Cir. 1996).

The parties dispute mainly the fourth and fifth prongs of the Williams test. Defendant argues that no issues of material fact exist and that the undisputed facts fail to establish a basis for holding Ample liable for creating or condoning a hostile work environment and demonstrate that Ample exercised reasonable care to address Plaintiff's complaint and prevent further harassment. Additionally, Defendant asserts that Adams' failure to report any further harassment after Becker returned from his suspension precludes liability on its part for any alleged continued harassment. Plaintiff responds that questions of fact preclude summary judgment in this case.

**A.      Hostile Work Environment**

A hostile work environment arises "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted). The Court looks at the totality of the circumstances to determine whether the alleged harassment is sufficiently pervasive or severe to constitute a hostile work environment. Williams, 187 F.3d at 562. "[T]he issue is not whether each incident of harassment standing alone is sufficient to

sustain the cause of action in a hostile environment case, but whether – taken together – the reported incidents make out such a case." Id.  Unless extremely serious, isolated incidents of harassment will not amount to discriminatory changes in the terms or conditions of employment actionable under Title VII.  See Morris v. Oldham County Fiscal Court, 201 F.3d 784, 790 (6th Cir. 2000).

Whether Plaintiff alleges sufficient facts to demonstrate a hostile environment is a legal question that may be addressed on summary judgment.  See Klemencic v. Ohio State Univ., 10 F. Supp. 2d 911, 916 (S.D. Ohio 1998); see also Black v. Zaring Homes, Inc., 104 F.3d 822 (6th Cir. 1997).  The test for a hostile work environment has both a subjective and an objective component.  Williams, 187 F.3d at 567.  First, Plaintiff must prove that she found the alleged conduct to be so severe or pervasive that it made it difficult for her to do her job.  Id. at 567-68.  Next, Plaintiff must also prove that a reasonable person would view the alleged conduct as creating a hostile work environment.  Id.  The relevant factors this Court must consider are:

> [T]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.  The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive.  But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

Harris, 510 U.S. at 23.

In the present case, viewing the totality of the circumstances in a light most favorable to the Plaintiff, questions of fact remain as to whether Becker's alleged conduct was severe or pervasive enough to create a hostile work environment.  First, as to the subjective prong of the test, Plaintiff sets forth sufficient evidence creating a question of fact as to whether she perceived

9

Becker's conduct to be severe or pervasive. Adams testified, for example, that even after Ample suspended Becker, she remained nervous that he would continue to harass her. Additionally Adams claimed that further contacts with Becker made her uncomfortable, prevented her from doing her job to her satisfaction, and eventually caused her to hate work.

Next, Plaintiff similarly points to sufficient evidence as may lead a reasonable factfinder to conclude that Becker's actions constituted an objectively hostile work environment.[4] The events Plaintiff alleges, most of which are described more fully above, include: (1) two incidents in which Becker made comments of a sexual nature toward Adams; (2) an incident in which Becker grabbed Plaintiff's butt; and (3) an incident in which Becker attempted to put a tool or a pipe between Plaintiff's legs. Plaintiff further claims that she heard Becker make similar comments to other women and saw him touch other women. Plaintiff fails to describe any of these observations in detail, or elaborate on the nature of Becker's comments to and physical interaction with other female employees. However, the record reveals that at least three other female employees complained that Becker had made comments and gestures of a sexual nature

---

[4] Aside from her problems with Becker, Plaintiff also alleges that she experienced problems with the technicians and claims they would not work on her machines unless she "let them talk nasty to [her] or [she] flirted with them." (Adams Dep. 26.) However, Plaintiff's deposition testimony contradicts this allegation. First, Adams testified that the only technician she specifically had trouble with was Letcher Carl. In later testimony, Plaintiff stated that she liked Carl and did not intend to claim that he subjected her to harassing comments. Instead, Adams clarified that although she believed Carl worked on other female employee's machines because they flirted with him and that she had difficulty getting him to work on her machine because she did not flirt with him, she was unsure whether the other women were flirting with Carl of their own volition or because he in some way encouraged the flirting. (See id. at 43-44.) Plaintiff claims she notified Freeze of her problem with Carl, though she cannot recall when she made the complaint and does not elaborate on the nature of the complaint. Without more, Plaintiff cannot show that Defendant is liable for failing to respond to such conduct.

targeted toward them.  Many of the incidents occurred within a period of less than a year.  Based on the factors set forth in Harris, 510 U.S. at 23, the Court finds that questions of fact remain as to whether Plaintiff was subjected to a hostile work environment.  See Petty v. DHL Airways, Inc., 176 F. Supp. 2d 773, 782 (S.D. Ohio 2001) (holding that questions of fact remained as to whether plaintiff's allegations were sufficient to constitute a hostile work environment where there was "a genuine issue of material fact as to whether [the accused supervisor's] conduct was 'commonplace,' 'ongoing,' or 'continuing'"); Johnson v. United Parcel Service, Inc., No. 03-5620, 117 Fed. Appx. 444 (6th Cir. Dec. 21, 2004) (noting that "harassment will be more severe if offensive comments were directed at a plaintiff"); but compare Burnett v. Tyco Corp., 203 F.3d 980, 985 (6th Cir. 2000) (holding that "a single battery coupled with two merely offensive remarks over a six-month period does not create an issue of material fact as to whether the conduct alleged was sufficiently severe to create a hostile work environment").

### B. Ample's Liability

Though Plaintiff presents sufficient evidence to create a question of fact as to whether the conditions at Ample were so severe and pervasive as to amount to a hostile work environment, this showing alone is insufficient to prevail on her claim against Ample.  To establish Ample's liability, Adams must show that Defendant "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action."  Hafford v. Seidner, 183 F.3d 506, 513 (6th Cir. 1999) (internal quotation marks and citation omitted); see also Williams, 187 F.3d at 561.

Plaintiff does not dispute that Defendant took action in response to Plaintiff's July 2004 complaint. Instead, Plaintiff argues that the corrective actions Defendant implemented were neither prompt nor appropriate. The Sixth Circuit has found that:

> [W]hen the allegations of sexual harassment involve a coworker and the employer has fashioned a response, the employer will only be liable "if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known. The act of discrimination by the employer in such a case is not the harassment, but rather the inappropriate response to the charges of harassment." Thus, an employer who implements a remedy "can be liable for sex discrimination in violation of Title VII only if that remedy exhibits such indifference as to indicate an attitude of permissiveness that amounts to discrimination."

McCombs v. Meijer, Inc., 395 F.3d 346, 353 (6th Cir. 2005) (quoting Blankenship v. Parke Care Centers, Inc., 123 F.3d 868, 873 (6th Cir. 1997)) (internal citations omitted)); see also Rudd v. Shelby County, No. 04-5939, 166 Fed. Appx. 777, 778 (6th Cir. Jan. 5, 2006); Nievaard v. City of Ann Arbor, No. 03-2340, 124 Fed. Appx. 948, 955 (6th Cir. Mar. 7, 2005).[5]

---

[5] In an unpublished opinion issued approximately one month after McCombs, the Sixth Circuit called this standard into question. See Collette v. Stein-Mart, Inc., No. 03-2101, 126 Fed. Appx. 678, 684 n. 3 (6th Cir. Feb. 8, 2005). In Collette, the court was faced with a claim involving supervisor rather than coworker harassment. Accordingly, the court applied the standard the Supreme Court set forth in Burlington Industries v. Ellerth, 524 U.S. 742, 765 (1998), and Faragher v. Boca Raton, 524 U.S. 775, 808 (1998) for analyzing employer liability for a supervisor's sexual harassment of an employee. The court noted that the Blankenship standard no longer applied under the Ellerth/Faragher test because the Supreme Court held in those cases that the employer had a duty of "reasonable care" in fashioning a remedy for unlawful discrimination. Collette, 126 Fed. Appx. at 684 n. 3.

Shortly thereafter, the United States District Court for the Northern District of Ohio applied Collette to a case involving coworker harassment, noting that the Supreme Court's reasoning in Ellerth and Faragher was broad enough to cover both supervisor and coworker harassment cases. See Kasprzak v. DaimlerChrysler Corp., 431 F. Supp.2d 771 (N.D. Ohio 2005). However, in an opinion issued the following year, the Kasprzak court reconsidered its holding, stating as follows:

> Nevertheless, defendants rightly cite a recently filed unpublished opinion in which the Sixth Circuit reaffirmed that, in instances of co-worker harassment, an employer is not liable for its employee's harassment if its remedial response was made in good faith. Rudd v. Shelby Cty., 166 Fed.Appx. 777, 777-78 (6th Cir.

Plaintiff argues that Defendant's act of suspending Becker was "too little, too late." (Doc. 23 at 8.) First, Plaintiff claims that Defendant was aware of Becker's behavior prior to Plaintiff's complaint and should have disciplined Becker earlier. In support of this claim, Plaintiff points to Defendant's own records, which show that Becker was reprimanded in the past for inappropriate behavior toward female employees. Indeed, the record shows that on October 10, 2001, Donna Halcomb, one of Defendant's supervisory employees, had a meeting with Becker during which she addressed complaints that Becker had made unwanted sexual comments to female coworkers and warned Becker that "[h]is conduct will not be tolerated and must stop, or further disciplinary action will be taken." (Cracraft Dep. Ex. 3.) Becker was again reprimanded in January 2003 due to complaints that he had put his arm around female employees and made inappropriate comments.

Plaintiff contends that Defendant should have taken stronger action against Becker at that point, and claims that by failing to do so Defendant allowed Becker to continue to harass female employees. Defendant contends, to the contrary, that it responded to each allegation with an appropriate disciplinary measure. Cracraft testified that in both 2001 and the 2003 incident, the complainants did not want to reveal their names, make a formal complaint, or meet with him.[6]

---

2005) (citing <u>Blankenship</u>, at 873). Consequently, defendants are correct--I cited
the wrong standard in the September 9 Order.
<u>Kasprzak v. DaimlerChrysler Corp.</u>, 431 F. Supp. 2d 779, 781 (N.D. Ohio 2006). Indeed, the Sixth Circuit continues to apply the <u>Blankenship</u> standard to cases involving an employer's liability for the alleged harassment of an employee by a coworker. <u>See</u> <u>Rudd</u>, No. 04-5939, 166 Fed. Appx. at 778; <u>Nievaard</u>, No. 03-2340, 124 Fed. Appx. at 955.

[6] With regard to the 2001 incident, Cracraft testified that,

> The complainants did not want to give their names nor did they want to come see me. They didn't want to make it formal, and yet Donna, the supervisor, Halcomb

For example, in 2003, Becker's supervisor, Brian Hancock notified Cracraft that he had received complaints about Becker. However, when Becker asked who had made the complaints, Hancock reported, "I'm getting it secondhand, it's not people involved, and they don't want to say." (Cracraft Dep. 21.) Cracraft advised Hancock to encourage the complainants to come forward, to no avail. Accordingly, there was no way for Cracraft to investigate the truth of the

---

>  still felt it important to bring it to Maurice Becker's attention that we had been made aware of it and to bring him in, and we discussed this issue with him, and we explained at that time our sexual harassment policy and the significance of it.

(Cracraft Dep. 18.) He further stated that,

> I think Donna brought Maurice in, and she addressed him in my presence, in the office to I think impress upon him the seriousness of the nature in her mind, although individuals, and I never did know who they were, they did not want Donna to report that. I don't know who they were, and Donna wrote several employees, but I don't know what several is. I never did know, and that was made clear to Donna as supervisor, but she still had asked me did I think that she needed to say something, and I said yes, I do, but we can't progress with an investigation or take really additional action unless at least one of the complainants will own up to it, come see me, and we'll certainly take it as seriously as I think it should be.

(Id. at 19.)

allegations.[7] Nevertheless, with each incident the company issued a verbal reprimand and a warning that it would not tolerate such behavior.

Defendant cites <u>Hodoh-Drummond v. Summit County</u>, 84 F. Supp. 2d 874 (N.D. Ohio 2000), as support for its assertion that even if these earlier incidents show that Ample had some knowledge of Becker's inappropriate behavior prior to July 2004, the company responded in a reasonable and sufficient manner under the circumstances. In <u>Hodoh-Drummond</u>, the plaintiff argued that her employer knew or should have known that another employee was engaging in inappropriate behavior toward other female employees because management had previously reprimanded the accused employee for such behavior. The court noted that even if this was evidence of prior knowledge, it also demonstrated that the employer responded to alleged harassment:

> Another co-worker, Kathy Letzler, testified to an incident involving Croghan that occurred two or three years before the conduct at issue here. Letzler says she overheard Marilyn Moses, a member of management, tell Croghan to "keep his hands to himself." This comment could be taken as evidence that management knew Croghan engaged in objectionable conduct. It could also show that the County Defendants reprimanded Croghan; if so, such evidence would help the defendants prove they responded to employee complaints, not that they ignored them.

---

[7] Consistent with his statement regarding the 2001 incident, Cracraft testified that,

> Again, here in '03, my hands are somewhat tied, because no one will step forward and report anything to me so that I can additionally investigate the claim. I think the sense was, and that's what I got from Brian, Brian asked do I need to write anything down. I said at least make a note of it for me, which is what he did, and that's what this note is that he put in the record, but again, we had no named complainant, nor no one that wanted to see me of the employees, so there's no investigation that I could launch. I couldn't do a follow-up investigation when I didn't have a complainant that I could start with.

(Cracraft Dep. 21-22.)

Id. at 881. Similarly, in this case, the evidence shows that while Ample had limited knowledge that Becker may have engaged in inappropriate conduct toward female employees, it responded to each complaint with the level of discipline deemed appropriate.

Plaintiff argues that the fact that Becker continued to make sexual comments and touch female employees inappropriately shows that Ample's response to the earlier incidents was inadequate. However, the reasonableness of Ample's response to the 2001 and 2003 allegations of harassment depends upon the facts within Ample's knowledge at the time each incident occurred. See McCombs, 395 F.3d at 358 ("The consideration of reasonableness implies a reasonableness under the circumstances."). Considering that at the time those allegations surfaced no employee came forward to lodge a complaint against Becker or to provide a more detailed account of the alleged harassment, Ample's response was entirely appropriate. The company did not ignore the allegations, but rather kept official reports of the incidents, reprimanded Becker, and warned him that further complaints could result in the implementation of additional disciplinary measures. Such a response was not only reasonable, but also was entirely consistent with the company's sexual harassment policy, which provides that "[b]ased on the seriousness of the offense, disciplinary action may include verbal or written reprimand, suspension, or termination." (Cracraft Aff. Ex. 1 at 42.)

Plaintiff next argues that Defendant did not suspend Becker quickly enough after she and Theresa Carmody complained about his behavior to Freeze in July 2004. The facts show, however, and Plaintiff does not dispute, that Cracraft met with Becker the same day that Freeze notified him of the complaints and warned Becker that alleged conduct was inappropriate and may result in disciplinary action. Cracraft immediately launched an investigation into the

16

complaints, and a week later, Ample suspended Becker without pay. The brief delay was neither unreasonable nor demonstrative of indifference on the part of the company. To the contrary, Cracraft emphasized to Becker that the company was taking the complaints seriously and would investigate the allegations. Further, the company followed through with its warning to Becker that if the investigation showed that he had engaged in inappropriate behavior, the company would implement disciplinary measures.

Plaintiff last argues that Defendant's corrective measures were inadequate because Becker continued to harass her by smiling and laughing at her after he returned from his suspension.[8] Plaintiff contends the company should have fired Becker. However, at the time Plaintiff made her complaint against Becker, she expressed that she did not want to "make a big issue" out of the complaint, but simply wanted Becker's inappropriate comments and behavior to stop. (Cracraft Aff. Ex. 3.) Additionally, Plaintiff testified that she did not necessarily want

---

[8] The Court notes that to the extent Plaintiff presents evidence of a hostile work environment prior to Becker's suspension, she presents little to no evidence that the environment persisted beyond Becker's suspension. As to Becker's behavior following his return to work, Plaintiff testified only that Becker would "laugh and smile and make gestures like that." (Adams Dep. 93.) When asked what she meant by "make gestures like that," Adams responded merely "[s]miling and laughing." (Id.) The Sixth Circuit has held that non-sexual conduct may contribute to a hostile work environment, but the plaintiff must present some evidence that the non-sexual conduct was somehow based on her sex for that conduct to constitute sexual harassment. See Williams, 187 F.3d at 565 ("[T]he law recognizes that non-sexual conduct may be illegally sex-based where it evinces anti-female animus, and therefore could be found to have contributed significantly to the hostile environment." (citation and internal quotation marks omitted)). For example, in Williams, the Sixth Circuit held that "[t]he myriad instances in which [the plaintiff] was ostracized, when others were not, combined with the gender-specific epithets used, such as "slut" and "fucking women," create an inference, sufficient to survive summary judgment, that her gender was the motivating impulse for her co-workers' behavior." Id. at 566.

Other than the possibility that Becker smiled and laughed at Adams in retaliation for her complaining of his earlier harassment, there is little if any basis to conclude that Becker acted in this manner because of Plaintiff's sex. Moreover, while Plaintiff claims that this behavior made her uncomfortable, the behavior does not rise to such a severe or pervasive level as would cause a reasonable factfinder to conclude that it constituted a hostile work environment.

Becker to be terminated, but rather "just wanted him away from [her]." (Adams Dep. 57.) Moreover, "a harassment victim may not dictate an employer's action against a co-worker." Blankenship, 123 F.3d at 874. Accordingly, Plaintiff's belief that Defendant should have terminated Becker is irrelevant. See Starks v. West Meade Place, LLP, No. 3:05-0442, 2006 WL 2827420, at *6 (M.D. Tenn. Sept. 28, 2006) ("The question is not whether other remedial actions should have been taken or whether the actions taken by the Defendant were those desired by the Plaintiff. Instead, the question is whether the Defendant encouraged harassment in the workplace or evidenced culpable indifference to it.").

As stated above, the adequacy of Defendant's response is to be judged based on the facts known to Defendant at the time it took action. In this case, Defendant received complaints from at least three female employees, including Adams, alleging Becker had sexually harassed them. Based on those complaints, the company investigated the allegations, suspended Becker without pay for three weeks, and only allowed him to return to work after he had sought and begun counseling and only on the express condition that he would not engage in similar inappropriate conduct in the future. Additionally, Defendant sent Plaintiff a letter to notify her that it had taken corrective measures and that it would assure that Plaintiff "be provided a workplace free of sexual harassment conduct." (Doc. 1 Ex. A.)

Despite Plaintiff's contention that Becker continued to harass her by smiling and laughing at her, she reported no further incidents of harassment to her supervisor or to any other individual at Ample. In fact, Ample has not received any complaints against Becker since he returned to work. Plaintiff argues that she did not report her continued problems with Becker because the fact that Ample did not disclose the precise disciplinary measures it implemented

18

made her feel as though the company was supporting Becker rather than her. However, Plaintiff points to no evidence indicating that Ample was indifferent to Plaintiff's complaint, or that it in any way condoned Becker's behavior. To the contrary, the undisputed facts show that Ample responded to Adam's complaint quickly and implemented deterrent measures reasonably calculated to end the harassing conduct. See Hodoh-Drummond, 84 F. Supp. 2d at 881 (holding that the defendant responded promptly and appropriately to the plaintiff's complaint that her coworker sexually harassed her where the defendant temporarily suspended the coworker two days after receiving plaintiff's complaint, conducted an investigation, and then placed the coworker on unpaid leave for thirty days); See Fenton v. HiSAN, Inc., 174 F.3d 827, 831 (6th Cir. 1999) (granting summary judgment to an employer on the plaintiff's hostile environment sexual harassment claim because the employer acted reasonably to correct the situation by speaking with the harasser and telling him to cease the alleged conduct or face discipline). Plaintiff has therefore failed to show that the corrective measures Defendant took were not prompt or appropriate. Accordingly, the Court dismisses Plaintiff's sexual harassment claim.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

    s/Susan J. Dlott
Susan J. Dlott
United States District Judge